No. 65,435

In the Matter of JAMES LARRY LINN, *Respondent.*

(804 P.2d 350)

Opinion filed January 18, 1991.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for petitioner.

*James Larry Linn,* pro se, and *Mel L. Gregory,* court-appointed supervising attorney, appeared for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against James Larry Linn, of Wichita, an attorney admitted to the practice of law in Kansas. The complaint filed against the respondent alleges violations of the Model Rules of Professional Conduct (1990 Kan. Ct. R. Annot. 210) and Supreme Court Rule 207 (1990 Kan. Ct. R. Annot. 141).

A formal hearing before a panel of the Board for Discipline of Attorneys was held on November 2, 1989. Linn appeared pro se. Prior to the taking of evidence, Linn stipulated that he did not cooperate with the investigations of the complaint and is in violation of Supreme Court Rule 207. The Disciplinary Administrator's Exhibits D and E, letters dated June 19, 1989, and July 12, 1989, to Linn from the investigator appointed to investigate these complaints, were admitted into evidence. The July 12 letter was sent by certified mail and the receipt was signed by Linn on July 13, 1989. Linn admitted that he received the letters.

The facts are not in dispute. Jack Zollman contacted Linn on May 24, 1988, concerning a claim for wrongful termination against his former employer, the Boeing Military Airplane Company. On June 6, 1988, Zollman gave Linn a check for $100 as partial payment on the fee agreement of a $500 retainer plus an hourly charge of $100. On June 10, 1988, Zollman gave Linn a check for the balance of the retainer fee.

During a conference on May 25, 1988, or June 6, 1988, Zollman agreed to obtain documents stating the policies and rules of the

employer. During the summer of 1988, Zollman delivered the documents to Linn. Zollman testified that Linn indicated that he would write a couple of letters to the employer. Although Linn's office file did not contain copies of such letters, Linn testified that he thought he had written one letter to the employer. Linn stated that he did have telephone conversations with three different supervisory people employed by Boeing.

At the first meeting between Zollman and Linn, Linn suggested that Zollman file for unemployment benefits. Zollman handled his request for unemployment benefits himself until August 1988, when a hearing was set on Zollman's appeal of the denial of unemployment benefits. Zollman requested that Linn represent him at the hearing. Due to Linn's efforts, Zollman was awarded past due unemployment benefits in excess of $2,000.

When Linn and Zollman met in September 1988, Linn advised his client that he had expended more time than provided by the original retainer of $500. Zollman gave Linn a $200 check dated September 23, 1988. Thereafter, numerous telephone calls by Zollman to Linn went unanswered and several scheduled conferences or appointments between the client and his attorney were cancelled by Linn. Linn testified that, after the unemployment benefits hearing, although he had no contact with the client, he continued to pursue Zollman's action against his former employer.

When Zollman was unable to contact Linn by telephone or keep a scheduled appointment with him, he wrote a certified letter to Linn on February 11, 1989, terminating Linn's employment. In addition to advising Linn his services were terminated, Zollman requested that Linn return all documents and correspondence regarding his claim against his former employer and prepare an itemized accounting of services Linn had rendered. Though the receipt for the letter was signed by Linn on February 16, 1989, Linn did not comply with Zollman's request.

On March 8, 1989, Zollman hired another attorney, who wrote to Linn and requested that Zollman's documents be delivered to him. Linn did not recall receiving or answering the letter from Zollman's new attorney.

On May 30, 1989, Zollman informed the Disciplinary Administrator by letter of Linn's failure to respond to Zollman's requests

that his employment documents be given to his new attorney and that an itemized bill for services rendered be furnished. It was not until the November 2, 1989, hearing before the panel that Linn delivered the documents to Zollman.

In mitigation for his failure to respond to Zollman and the request of the investigator for the Disciplinary Administrator, Linn presented evidence of his psychological and physical problems associated with his diabetic condition, eye surgery, and other personal problems stemming from family illness. These mitigating circumstances were also considered by the disciplinary panel in case numbers B4386, B4416 and B4412 and by this court in *In re Linn*, 245 Kan. 570, 781 P.2d 738 (1989).

In the prior hearings, medical testimony established that Linn first sought medical attention for his diabetic condition on September 29, 1988. After treatment, Linn had his first normal blood sugar count on January 3, 1989. Linn appeared before the disciplinary panel on these prior complaints on January 18, 1989, and February 23, 1989, and assured the panel that he had his medical problems under control. It is important we note that it was between the January 18 and February 23 hearings that Linn received Zollman's letter discharging Linn and requesting him to return Zollman's documents and requesting an accounting for Linn's services.

In the present complaint the panel found there was clear and convincing evidence that Linn violated Supreme Court Rule 207 by failing to cooperate in the investigation of the complaint. The panel unanimously found clear and convincing evidence that Linn violated MRPC 1.3 (1990 Kan. Ct. R. Annot. 219) in that Linn did not act with reasonable diligence and promptness in representing a client; that Linn violated MRPC 1.4 (1990 Kan. Ct. R. Annot. 220) in that Linn neither kept his client informed of the status of the matter nor answered the requests of the client for information; that Linn violated MRPC 1.15(d)(2)(iii) and (iv) (1990 Kan. Ct. R. Annot. 248) in that Linn failed to render an appropriate accounting to his client regarding his fee and failed to promptly deliver to the client's new attorney the documents in his possession as requested; and that Linn violated MRPC 8.4(g) (1990 Kan. Ct. R. Annot. 290) as his conduct in this matter adversely reflects on his fitness to practice law.

In *In re Linn*, 245 Kan. 570, a panel of the Board for Discipline of Attorneys determined that the undiagnosed diabetes had substantially affected Linn's behavior and was an extremely mitigating factor in determining the discipline to be imposed. It recommended that Linn be placed on probation by this court for a period of one year. We agreed with the panel's recommendation and ordered that the imposition of discipline against Linn be suspended and he be placed on probation for one year under the following conditions:

1. that he not violate any of the Model Rules of Professional Conduct or the Disciplinary Rules;
2. that he cooperate fully with his supervising attorney and the disciplinary administrator;
3. that his practice of law be supervised by a practicing attorney to be named by and accountable to the disciplinary administrator;
4. that respondent make restitution to the complainant in the last complaint in the sum of $810, representing the retainer fee of $750 and costs of $60; and
5. that he pay the 1989-90 attorney registration fee together with any late penalty.

The panel here observed that a portion of the current complaint against Linn occurred while he was appearing before the previous panel. Based on Linn's continuation of being unresponsive to his clients, the panel recommended that the respondent be disciplined by indefinite suspension from the practice of law pursuant to Rule 203(a)(2) (1990 Kan. Ct. R. Annot. 137).

At the hearing before this court, the respondent did not contest the finding of the panel but did take exception to the recommendation of the panel. The respondent requested we take notice of our previous orders regarding supervision of the respondent and note the report of the supervising attorney, Mel L. Gregory.

Gregory reported that since he was appointed to supervise Linn in April of 1990, Linn has complied with all requirements of this court. Gregory reported he had met with Linn weekly. Linn has furnished him with a complete report on each case and has and is attempting to obtain employment. Gregory and the Disciplinary Administrator recommended that Linn continue his probationary period under the supervision of the Disciplinary Administrator.

We find that there is clear and convincing evidence to establish that Linn violated Supreme Court Rule 207; MRPC 1.3; MRPC 1.4; MRPC 1.15(d)(2)(iii) and (iv); and MRPC 8.4(g). We agree with the panel that Linn's conduct is serious. Contrary to the panel's determination, we find that diabetes continues to substantially affect respondent's behavior and is an extremely mitigating factor in determining the discipline to be imposed in this case. Through the help and guidance given by Mel Gregory, Linn has taken substantial steps towards rehabilitation. Gregory's efforts are typical of many members of the Kansas Bar who freely give their time in an effort to rehabilitate a fellow attorney. Because of Linn's response to Gregory's efforts, we find that discipline should be suspended and that respondent's probation be extended for an additional one-year period.

Respondent is required to continue to cooperate with Gregory; to make all his files, bank statements, books, and records available to Gregory at any and all times; and to pay any and all travel, telephone, or other expenses necessarily incurred by Gregory in carrying out his supervisory duties.

IT IS THE ORDER OF THE COURT that Linn's probation be extended for an additional period of one year under the conditions previously imposed by this court. The supervising attorney shall continue to report respondent's progress to the Disciplinary Administrator on a quarterly basis. The Disciplinary Administrator shall submit a report to this court at the end of the extended period of probation and, upon receipt of the report, this court shall upon notice make such further order as justice may require.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to the respondent, and this court shall take whatever disciplinary action it deems just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports, and that respondent pay the costs of these proceedings.